**COMP**
**ESTEBAN-TRINIDAD LAW, P.C.**
M. LANI ESTEBAN-TRINIDAD
Nevada Bar No. 006967
4315 N. Rancho Drive, Ste. 110
Las Vegas, Nevada 89130
Telephone: (702) 736-5297
Fax: (702) 736-5299

Attorney for Plaintiff
SUSAN ESCALANTE

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| SUSAN ESCALANTE, an individual; | ) |
| Plaintiff, | ) |
| vs. | ) Case No. |
| ALLEGIANT AIR, LLC, a Nevada Limited Liability Company; DOES 1 through 10, inclusive; ROES CORPORATIONS ENTITIES 1 through 10 inclusive, | ) **COMPLAINT** ) ) (JURY TRIAL DEMANDED) |
| Defendants. | ) |

Plaintiff SUSAN ESCALANTE ("ESCALANTE"), for her causes of action against the above-named Defendants, and each of them, complains and alleges as follows:

### I.
### INTRODUCTION

1. This is a civil action for damages to redress depravation of Plaintiff's rights. This action comes under a variety of state and federal statutes prohibiting harassment, discrimination and retaliation in the workplace and to secure the protection of and to redress depravation of rights under these laws and related tort claims.

…

…

-1-

## II.
## PARTIES & JURISDICTION

2. Plaintiff's statutory claims arise under, including, but not limited to, Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended; 42 U.S.C. §2000e *et seq.*; the Nevada Anti-Discrimination Statute, Nevada Revised Statutes (NRS) §613.310 *et seq.* and NRS §608.005 *et seq.*, and any and all applicable federal and state statutes and regulations. Exemplary and punitive damages may be claimed under, including, but not limited to, Title VII, NRS §42.005, NRS §42.007, NRS §608.005 *et seq.*, and any and all other applicable federal and state statutory law.

3. This action includes claims arising under the laws of the state of Nevada, including, but not limited to, NRS §613.330, NRS §613.333, NRS §608.005 *et seq.* and other applicable Nevada law, which are joined pursuant to the doctrine of supplemental jurisdiction and 28 U.S.C. §1367a. Ms. Escalante, the Plaintiff, asserts she was sexually harassed by a co-worker despite numerous complaints to management and then terminated from her employment in retaliation for having reported sexual harassment in the workplace. There may be other federal and state statutes/regulations applicable to Defendants which provide additional remedies for harassment, discrimination and retaliation, and Plaintiff will seek leave to amend this Complaint if and when appropriate.

4. Ms. Escalante filed her charge of discrimination, harassment and retaliation with the Nevada Equal Rights Commission (EEOC) and signed her charge of discrimination, harassment and retaliation on August 15, 2007, a true and correct copy of which is attached hereto as Exhibit "1" and incorporated herein by reference. The EEOC issued its determination on January 31, 2009 with a finding of reasonable cause to believe Ms. Escalante was terminated in retaliation for complaining of a discriminatory practice in violation of Title VII of the Civil Rights Act of 1964. Ms. Escalante received a copy of her "Notice of Right to Sue" dated June 25, 2009, a true and correct copy of which is attached hereto as Exhibit "2" and incorporated herein by reference. Accordingly, Plaintiff has fulfilled all jurisdictional requirements for the filing of this lawsuit.

5. Jurisdiction of the Court is proper under §706(f)(3) of Title VII, 42 U.S.C. §200e-45(f)(3), and under NRS §613.330.

6. Venue is proper in the District of Nevada pursuant to 28 U.S.C. §1391(b) because unlawful employment practices were committed in and arose in the District of Nevada.

**PARTIES**

7. Plaintiff, SUSAN ESCALANTE, is a citizen of the United States, is female and is a resident of the State of Nevada, Plaintiff is now a resident of the State of Arizona.

8. Defendant, ALLEGIANT AIR, LLC, is a Nevada limited liability company and a business entity doing business at 3301 N. Buffalo Dr. B-9, Las Vegas, Nevada 89129 in the City of Las Vegas, County of Clark, State of Nevada.

9. Upon information and belief, and at all times relevant hereto, Defendants named and/or fictitiously named, and/or other names, or each of them, were the agents, ostensible agents, servants, employees, joint-employers, employers, alter-egos, partners, co-owners and/or joint venture's of each other and of their co-Defendants, and were acting within the color, purpose, and scope of their employment, agency, ownership, and/or joint ventures, and by reason of such relationships, the Defendants, and each of them, are jointly and severally responsible and liable for the acts or omissions of their co-Defendants, as alleged herein. The true names and capacities whether individual, corporate, associate or otherwise of Defendants DOES I through X, inclusive, are unknown to Plaintiff who therefore sues said Defendants by such fictitious names. Plaintiff is informed and believes and therefore, alleges that each of the Defendants designated herein as a DOE is legally responsible in some manner for the events and happenings herein referred to and legally caused injury and damages proximately thereby to Plaintiff as herein alleged. Plaintiff is informed and believes and thereon alleges that Defendants participated in, ratified and/or condoned the acts complained of in Plaintiff's Complaint and the subject matters of this action.

**III.**
**ALLEGATIONS COMMON TO ALL CAUSES OF ACTION**

10. Plaintiff was hired by Defendant Allegiant on January 20, 2002 as a flight attendant. Plaintiff excelled at her job, received various commendations from her employer and, soon after being hired, was promoted to the lead flight attendant position.

-3-

11. Starting in March 2006 and continuing through the remainder of her employment with Defendant Allegiant, Plaintiff was subjected to a continuous pattern of sexual harassment by co-worker and fellow flight attendant Candy Anderson. The continuous unwelcome sexual harassment included, but was not limited to:

A. On March 3, 2006, Candy Anderson, an employee of Defendant Allegiant, touched Plaintiff's thighs with both hands in the passenger aisle of an Allegiant aircraft and then pulled down Plaintiff's dress in front of passengers. Plaintiff was embarrassed, humiliated and shocked by Candy Anderson's conduct.

B. On May 31, 2006, after Plaintiff had reached into a front galley cupboard of an Allegiant aircraft, Candy Anderson inappropriately commented to Plaintiff, "[Y]ou can see your whole ass from here."

C. On July 13, 2006, in the back galley of an Allegiant aircraft, Candy Anderson again placed both hands on Plaintiff's thighs, pulled down Plaintiff's skirt and inappropriately commented, "[W]hen you [Plaintiff] were walking up the stairs to get on the plane, I was behind you and I could see your whole ass."

D. On January 7, 2007, while Plaintiff and Candy Anderson were on the stairs of an Allegiant aircraft, Candy Anderson again placed both hands on the front of Plaintiff's thighs and pulled down Plaintiff's dress.

12. Candy Anderson's continuous, inappropriate and unwelcome sexual conduct and comments over a ten (10) month period created a sexually hostile work environment for Plaintiff.

13. In response to the sexually harassing conduct by Candy Anderson, Plaintiff repeatedly complained both to Candy Anderson and to her supervisors and other managerial employees of Defendant Allegiant regarding the unwelcome sexually harassing behavior and resultant hostile work environment. Unfortunately, Candy Anderson did not stop her harassing conduct, and Defendant Allegiant failed to exercise reasonable care to investigate and/or correct the sexually harassing behavior. Plaintiff's complaints included, but were not limited to:

A. On March 3, 2006, after Candy Anderson touched Plaintiff's thighs and pulled down Plaintiff's dress in front of passengers, Plaintiff told Candy Anderson she needed to talk to her after work. Plaintiff told Candy Anderson after work that her behavior was inappropriate and that she was never to touch Plaintiff again. That day, Plaintiff also reported Candy Anderson's sexually harassing behavior to Allegiant Base Coordinator Marilyn Hunter both verbally and in writing pursuant to Allegiant's "Chain of Command" procedures.

B. On March 7, 2006, Plaintiff contacted Defendant Allegiant's Director of People Services, Pat Stockfish, and inquired about Allegiant's procedure to file a complaint against an employee for sexual harassment. Ms. Stockfish advised Plaintiff to complain to her supervisor or manager or to People Services.

C. On May 31, 2006, in response to Candy Anderson's comment, "[Y]ou can see your whole ass from here," Plaintiff told Candy Anderson she should keep her comments to herself and that Plaintiff would not tolerate those comments.

D. On May 31, 2006, Plaintiff again contacted Ms. Hunter and advised her again about Candy Anderson's sexually harassing behavior on March 3, 2006 as well as her sexually harassing comment on May 31, 2006. At that time, Ms. Hunter advised Plaintiff she "would handle it." Unfortunately, neither Ms. Hunter nor Defendant Allegiant exercised reasonable care to investigate and/or correct Candy Anderson's sexually harassing behavior.

E. On July 13, 2006, after Candy Anderson again touched Plaintiff's thighs and pulled down her dress, Plaintiff instructed Candy Anderson she was not to touch Plaintiff again, that her behavior was inappropriate and that she was going to advise their supervisor, Jesse Sexton, about her behavior.

F. Also on July 13, 2006, Plaintiff again contacted Ms. Hunter both verbally and in writing and reported the July 13, 2006 incident wherein Candy Anderson again touched Plaintiff's thighs and again pulled down her dress. That same day, Plaintiff contacted her supervisor, Jesse Sexton, and advised him about Defendant Anderson's continuous pattern of sexually harassing behavior. More than three (3) weeks later, on August 4, 2006, Mr. Sexton finally responded to Plaintiff, advising her he

would speak to Candy Anderson about her behavior. Unfortunately, again, neither Ms. Hunter nor Mr. Sexton exercised reasonable care to investigate and/or correct Candy Anderson's sexually harassing behavior.

G.   On September 7, 2006, after receiving no update or response from Mr. Sexton, Plaintiff advised Mr. Sexton via e-mail that Candy Anderson's sexually harassing behavior had not changed. Thereafter, Plaintiff also informed Defendant Allegiant's Director of In-Flight, Marielle Landry, about her complaints regarding Candy Anderson. Ms. Landry advised Plaintiff she should give Mr. Sexton a chance to "fix the problem."

H.   On September 23, 2006, Ms. Landry followed up with Plaintiff to see if Plaintiff had heard from Mr. Sexton. Plaintiff advised Ms. Landry she had not heard from Mr. Sexton regarding her complaints about Candy Anderson's sexually harassing behavior. On October 12, 2006, Plaintiff again contacted Ms. Hunter to advise her Plaintiff was continuing to have problems with Candy Anderson and that nothing had been done by Defendant Allegiant to stop the sexually harassing behavior. Ms. Hunter's response to Plaintiff's plea that something be done to stop Candy Anderson's sexually harassing conduct simply was to send a memo to the entire flight attendant staff that they should stop "bad-mouthing" one another.

I.   On November 16, 2006, Plaintiff requested that Ms. Hunter send copies of her complaints to Ms. Stockfish for further inquiry because she was continuing to have problems with Candy Anderson and nothing had been done by management to remedy the sexually harassing behavior. Plaintiff also contacted the People Services Department directly that day to report her previous complaints and the ongoing misconduct by Candy Anderson.

J.   On December 28, 2006, Plaintiff again contacted Ms. Stockfish to check on the status of her complaints about Candy Anderson's sexually harassing behavior and to request a conference among Ms. Stockfish, Ms. Hunter and herself regarding the ongoing problems. Plaintiff was advised the conference call would have to be put on hold.

K.   On January 1, 2007, Plaintiff received a <u>merit</u> salary increase.

L. On January 7, 2007, Plaintiff, in response to Candy Anderson again touching Plaintiff's thighs and again pulling down Plaintiff's dress, again advised Candy Anderson she did not approve of her unwelcome and inappropriate behavior and instructed her not to touch her or her dress again. That same day, Plaintiff contacted Ms. Hunter both verbally and in writing and also informed People Services about the incident.

M. On January 8, 2007, Plaintiff again contacted Ms. Hunter regarding Allegiant's failure to investigate and/or correct Candy Anderson's sexually harassing behavior and was told by Ms. Hunter that management would be talking to her on January 9, 2007 regarding her "issues."

N. On January 9, 2007, Plaintiff was in Las Vegas, Nevada for the first of three days of Federal Aviation-required Recurrent Training Classes. During her first class, Plaintiff was summoned out of the class by Mary Grace Clemmonds, Allegiant's Vice President of In-Flight; Ms. Landry, and Michelle Pro, Allegiant's Manager of People Services. Plaintiff was questioned about safety and about lack of self confidence. She then was told she was being terminated. During her five (5) years of employment with Defendant Allegiant, Plaintiff had no written or verbal reprimands or disciplinary actions. She had been given no warning she might be terminated. In light of Plaintiff's unblemished, five-year career with Defendant Allegiant, her promotion to lead flight attendant and her January 1, 2007 merit salary increase, the only logical conclusion is that Plaintiff was terminated for her persistent complaints about sexual harassment.

O. That same day, Ms. Clemmonds and Ms. Landry took Plaintiff to Monte Vista Hospital in Las Vegas, Nevada after Plaintiff expressed depression about losing her job. Plaintiff was advised the visit would be free and she would be able to speak to a therapist for up to five free sessions. However, rather than having Plaintiff speak to a therapist, Ms. Clemmonds and Ms. Landry admitted Plaintiff into the hospital and left her there. There were no "free" sessions, and Plaintiff has been left to pay the hospital bills.

P. Defendant Allegiant, acting through its management, knew about the sexually harassing conduct committed against Plaintiff.

Q. Defendant Allegiant knew or should have known about its obligation pursuant to state and federal statutes to maintain a workplace free of sexual harassment and retaliation.

R. Defendant Allegiant failed to take reasonably adequate steps to prevent sexual harassment and retaliation in its workplace in Nevada.

S. Plaintiff has suffered damages for lost wages and other work-related losses.

T. Plaintiff has suffered extreme and severe emotional distress including, but not limited to, depression, sadness, anxiety, sleeplessness, humiliation, embarrassment and stress.

U. Plaintiff has sought psychological counseling and medication to treat her depression, sadness, anxiety, sleeplessness, humiliation, embarrassment and stress.

## IV.
## CAUSES OF ACTION

### FIRSTCAUSE OF ACTION
### SEXUAL HARASSMENT AND SEX DISCRIMINATION UNDER TITLE VII, NRS §613.330 AND ALL OTHER APPLICABLE FEDERAL AND STATE ANTI-DISCRIMINATION/ANTI-HARASSMENT STATUTES

14. Plaintiff re-pleads and re-alleges and incorporates herein by reference each and every allegation contained in paragraphs above as if fully set forth herein.

15. Defendants willfully subjected Plaintiff to unwanted sexual harassment, sex discrimination and retaliation. Defendant Allegiant was aware of the sexually harassing conduct of its employee, Candy Anderson, toward Plaintiff. Defendant Allegiant ratified the conduct of its employee in engaging in sexually harassing conduct toward Plaintiff. Defendant Allegiant, as an employer, knew or should have known about its long-standing obligation to maintain a workplace free of sexual harassment.

16. Defendant Allegiant failed to take reasonably adequate steps to prevent sexual harassment in the workplace.

17. Candy Anderson engaged in a continuous pattern of conduct, despite repeated warnings, that resulted in a severe and pervasive, hostile, sexual harassing work environment for Plaintiff.

18. Defendant Allegiant, despite numerous and repeated complaints by Plaintiff, allowed the severe and pervasive, hostile, sexually harassing work environment to exist for Plaintiff. Defendant Allegiant discriminated against Plaintiff in violation of 42 U.S.C.A §2000e-2 and NRS §613.330 by failing to exercise reasonable care to prevent, investigate properly and correct promptly sexually harassing behavior. Defendant Allegiant deprived Plaintiff of certain benefits, privileges and terms and conditions of employment and denied her continued employment because of her sex to her damage and injury.

19. As a proximate result of the aforementioned harassing and discriminatory employment practices, Plaintiff suffered loss of wages, bonuses and various benefits and other losses in a presently un-ascertained amount. Plaintiff prays leave of Court to insert those figures when such have been fully ascertained.

20. As a further proximate result of the aforementioned harassing and discriminatory employment practices, Plaintiff suffered depression, sadness, anxiety, sleeplessness, humiliation, embarrassment, stress and other incidental damages and out of pocket expenses all to her general damages, in excess of $15,000.00, according to proof, to be determined at time of trial.

21. As a further proximate result of the aforementioned harassing and discriminatory employment practices, Plaintiff was compelled to retain legal counsel to prosecute this claim, and Defendants, and each of them, are liable for Plaintiff's attorneys fees reasonably and necessarily incurred in connection therewith.

22. The conduct of Defendants Allegiant and Anderson was oppressive and malicious and done in conscience disregard of the rights of Plaintiff, and Plaintiff therefore is entitled to punitive damages.

## SECOND CAUSE OF ACTION
### RETALIATION IN VIOLATION OF TITLE VII AND ALL OTHER APPLICABLE FEDERAL AND STATE LAW

23. Plaintiff re-pleads and re-alleges and incorporates herein by reference each and every allegation contained in paragraphs above as if fully set forth herein.

24. After Plaintiff reported the continuous acts of sexual harassment to management of Defendant Allegiant, her employment with Defendant Allegiant was terminated.

25. Specifically, following repeated complaints of sexual harassment by Plaintiff to various members of Allegiant management, she was terminated on January 9, 2007 – just one day after complaining, yet again, to Ms. Hunter about Candy Anderson's misconduct and Defendant Allegiant's failure to properly investigate and correct Candy Anderson's sexually harassing behavior toward her.

26. Prior to her termination, Plaintiff had received no reprimands or discipline in connection with her job performance and had received no warnings of potential termination.

27. Defendant Allegiant knew or should have known about its obligation to refrain from and prevent retaliatory acts against Plaintiff and failed to do so.

28. Defendant Allegiant acted in contravention of applicable federal law and state law proscribing retaliation for reporting harassment and/or discrimination in the workplace.

29. As a proximate result of the aforementioned retaliatory conduct, Plaintiff suffered loss of wages, bonuses and various benefits and other losses in a presently unascertained amount. Plaintiff prays leave of Court to insert those figures when such have been fully ascertained.

30. As a further proximate result of the aforementioned retaliatory conduct, Plaintiff suffered depression, sadness, anxiety, sleeplessness, humiliation, embarrassment, stress and other incidental damages and out of pocket expenses all to her general damages, in excess of $15,000.00, according to proof, to be determined at time of trial.

31. As a further proximate result of the aforementioned retaliatory conduct, Plaintiff was compelled to retain legal counsel to prosecute this claim, and Allegiant is liable for her attorneys fees reasonably and necessarily incurred in connection therewith.

32. The conduct of Defendant Allegiant was oppressive and malicious and done in conscious disregard of the rights of Plaintiff, and Plaintiff therefore is entitled punitive damages.

### THIRD CAUSE OF ACTION
### WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY

33. Plaintiff re-pleads and re-alleges and incorporates herein by reference each and every allegation contained in paragraphs above as if fully set forth herein.

34. The State of Nevada has a public policy against sexual harassment, and discrimination in the workplace and against retaliation for reporting harassment and/or discrimination, and violation of such policy constitutes wrongful termination or a public policy tort.

35. Defendant Allegiant violated a public policy of the State of Nevada against retaliation for reporting or complaining about sexual harassment and/or discrimination in the workplace when it terminated Plaintiff's employment because she made such complaints.

36. As a proximate result of the aforementioned wrongful termination, Plaintiff suffered loss of wages, bonuses and various benefits and other losses in a presently un-ascertained amount. Plaintiff prays leave of Court to insert those figures when such have been fully ascertained.

37. As a further proximate result of the aforementioned wrongful termination, Plaintiff suffered depression, sadness, anxiety, sleeplessness, humiliation, embarrassment, stress and other incidental damages and out of pocket expenses all to her general damages, in excess of $15,000.00, according to proof, to be determined at time of trial..

38. As a further proximate result of the aforementioned wrongful termination, Plaintiff was compelled to retain legal counsel to prosecute this claim, and Defendant Allegiant is liable for her attorneys fees reasonably and necessarily incurred in connection therewith.

39. The conduct of Defendant Allegiant was oppressive and malicious and done in conscience disregard of the rights of Plaintiff, and Plaintiff therefore is entitled to punitive damages.

### FOURTH CAUSE OF ACTION
### NEGLIGENT HIRING, TRAINING, SUPERVISION

40. Plaintiff re-pleads and re-alleges and incorporates herein by reference each and every allegation contained in paragraphs above as if fully set forth herein.

41. Plaintiff was hired by Defendant Allegiant on January 20, 2002.

42. Defendant Allegiant had a duty to exercise ordinary care in hiring employees qualified and suitable to perform the services of its business and, thereafter, to provide such employees with proper training and supervision so they would not cause harm to other members of Defendant Allegiant's workforce during the course and scope of their employment.

43. Defendant Allegiant breached its duty by hiring, and thereafter negligently training and supervising, Candy Anderson, who was unqualified and unable to properly perform her duties, which included refraining from engaging in sexual harassment and ultimately resulted in and caused the sexual harassment of and retaliation against Plaintiff within the time period described above.

44. Defendant Allegiant further had a duty to exercise ordinary care in hiring managers and supervisors who were qualified and suitable to perform the services of its business and, thereafter, to provide such managers and supervisors with proper training and supervision so they would properly respond to complaints of harassment in the workplace during the course and scope of their employment.

45. Defendant Allegiant breached its duty by hiring, and thereafter negligently training and supervising, managers/supervisors Pat Stockfish, Marilyn Hunter, Jesse Sexton and Marielle Landry, who were unqualified and unable to properly perform their duties, which included taking reasonable care to investigate and/or correct the sexually harassing behavior against Plaintiff within the time period described above.

46. As a proximate result of the aforementioned negligent hiring, training and supervision, Plaintiff suffered loss of wages, bonuses and various benefits and other losses in a presently unascertained amount. Plaintiff prays leave of Court to insert those figures when such have been fully ascertained.

47. As a further proximate result of the negligent hiring, training and supervision, Plaintiff suffered depression, sadness, anxiety, sleeplessness, humiliation, embarrassment, stress and other incidental damages and out of pocket expenses all to her general damages, in excess of $15,000.00, according to proof, to be determined at time of trial..

48. As a further proximate result of the aforementioned negligent hiring, training and supervision, Plaintiff was compelled to retain legal counsel to prosecute this claim, and Defendant Allegiant is liable for her attorneys fees reasonably and necessarily incurred in connection therewith.

49. The conduct of Defendant Allegiant was oppressive and malicious and done in conscience disregard of the rights of Plaintiff, and Plaintiff therefore is entitled to punitive damages.

...

## FIFTH CAUSE OF ACTION
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

50. Plaintiff re-pleads and re-alleges and incorporates herein by reference each and every allegation contained in paragraphs above as if fully set forth herein.

51. The aforementioned actions of Defendants in addition to being illegal, constitute extreme and outrageous conduct and were performed with the intent and reasonable knowledge or reckless disregard that such actions would cause severe emotional harm and distress to Plaintiff, and did in fact cause such harm.

52. Defendants authorized and/or ratified the conduct of each and every other Defendant by failing to take measures to prevent further recurrences.

53. As a direct and proximate result of Defendants' conduct, Plaintiff has suffered damages and is entitled to recover compensatory damages and punitive damages related thereto.

54. As a further proximate result of the aforementioned intentional infliction of emotional distress, Plaintiff suffered depression, sadness, anxiety, sleeplessness, humiliation, embarrassment, stress and other incidental damages and out of pocket expenses all to her general damages, in excess of $15,000.00, according to proof, to be determined at time of trial..

55. Plaintiff will continue to endure said losses and damages for an indefinite period of time.

56. As a further proximate result of the aforementioned intentional infliction of emotional distress, Plaintiff was compelled to retain legal counsel to prosecute this claim, and Defendants, and each of them, are liable for her attorneys fees reasonably and necessarily incurred in connection therewith.

57.     The conduct of Defendants Allegiant and Anderson was oppressive and malicious and done in conscience disregard of the rights of Plaintiff, and Plaintiff therefore is entitled to punitive damages.

## SIXTH CAUSE OF ACTION
## NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

58.     Plaintiff re-pleads and re-alleges and incorporates herein by reference paragraphs above as if fully set forth herein.

59.     Defendants owed a duty to exercise due care and not subject Plaintiff to foreseeable risk of mental, emotional and/or physical injury, and Defendants knew or reasonably should have known that such acts and/or omissions of Defendants as herein alleged were likely to result in mental, emotional and/or physical injury to Plaintiff.

60.     Defendants, while engaging in the aforementioned conduct, did negligently inflict extreme mental and emotional distress, indignity, embarrassment and humiliation upon Plaintiff.

61.     As a direct and proximate result of Defendants' conduct, Plaintiff has suffered damages and is entitled to recover compensatory damages and punitive damages related thereto.

62.     As a further proximate result of the aforementioned negligent infliction of emotional distress, Plaintiff suffered depression, sadness, anxiety, sleeplessness, humiliation, embarrassment, stress and other incidental damages and out of pocket expenses all to her general damages, in excess of $15,000.00, according to proof, to be determined at time of trial..

63.     Plaintiff will continue to endure said losses and damages for an indefinite period of time.

64.     As a further proximate result of the aforementioned negligent infliction of emotional distress, Plaintiff was compelled to retain legal counsel to prosecute this claim, and Defendants, and

1  each of them, are liable for her attorneys fees reasonably and necessarily incurred in connection therewith.

2  65.   The conduct of Defendant Allegiant, was oppressive and malicious and done in conscience disregard of the rights of Plaintiff, and Plaintiff therefore is entitled to punitive damages.

## V.
## PRAYER FOR RELIEF

Wherefore, Plaintiff Susan Escalante prays for the following relief:

1. A trial by jury on all issues;

2. All employment-related losses, including, but not limited to, back pay, front pay and benefits;

3. All compensatory, special and general damages allowed by law;

4. Attorneys fees and costs of suit occurred herein;

5. Prejudgment interest;

6. Punitive damages in an amount sufficient to punish and deter Defendants from engaging in any such conduct in the future and as an example to other employers not to engage in such conduct; and

7. Any and all other applicable relief under federal law and Nevada law.

DATED this _____ day of September, 2009.

ESTEBAN-TRINIDAD LAW, P.C.

BY: _____
M. LANI ESTEBAN-TRINIDAD
Nevada Bar No. 006967
4315 N. Rancho Drive, Ste. 110
Las Vegas, Nevada 89130
Tel: (702) 736-5297
Fax: (702) 736-5299
Attorney for Plaintiff
SUSAN ESCALANTE

-16-

## JURY DEMAND

Pursuant to Federal Rules of Civil Procedure 38(b), Plaintiff hereby demands a trial by jury as to all issues.

DATED this 24th day of September, 2009.

ESTEBAN-TRINIDAD LAW, P.C.

BY: _____
M. LANI ESTEBAN-TRINIDAD
Nevada Bar No. 006967
4315 N. Rancho Drive, Ste. 110
Las Vegas, Nevada 89130
Tel: (702) 736-5297
Fax: (702) 736-5299

Attorney for Plaintiff
SUSAN ESCALANTE